425 S.E.2d 239

**Curtis MANGUS, Defendant Below, Petitioner,**

v.

**Honorable Charles E. McCARTY, Judge of the Circuit Court of Calhoun County,**

**and**

**Patricia L. McCARTNEY, Probation Officer for Calhoun County, Respondents.**

No. 21310.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 6, 1992.

Decided Dec. 18, 1992.

---

Duane C. Rosenlieb, Jr., St. Albans, for petitioner.

WORKMAN, Justice:

Curtis Mangus petitions this Court for a writ of prohibition preventing The Honorable Charles E. McCarty, Judge of the Fifth Judicial Circuit, Calhoun County,

West Virginia, from proceeding against him for violations of his probation. Mr. Mangus contends that the lower court lacks authority to impose any penalty for violations which may have occurred and further asserts that he should be released from further jurisdiction of the court, having served his probationary term. Under these circumstances, we agree with Mr. Mangus and hereby grant the requested writ of prohibition.

## I.

On June 12, 1989, Mr. Mangus was sentenced by the lower court to a one-to-five year indeterminate sentence for manufacturing a controlled substance. The sentence was suspended, and Mr. Mangus was placed on three years probation beginning June 12, 1989, and continuing through June 12, 1992. On July 28, 1989, Mr. Mangus' former probation officer, William M. Slaven, issued an out-of-state travel permit authorizing Mr. Mangus to travel to Cummings, Georgia, for employment purposes. Mr. Mangus contends that he has remained gainfully employed since arriving in Georgia and is presently employed as an equipment operator by C.W. Matthews Contracting Company in Cummings, Georgia. The out-of-state travel permit which had been issued on July 28, 1989, required Mr. Mangus to return to West Virginia by November 28, 1989. Mr. Mangus contends that he did return to West Virginia but was unable to contact anyone from the probation office due to the Thanksgiving holidays.

On November 29, 1989, Respondent Patricia McCartney informed Mr. Mangus by letter that she had become his new probation officer. After that information was mailed to Mr. Mangus, apparently no further attempts to contact Mr. Mangus were made until approximately November 21, 1990. At that time, Ms. McCartney caused a warrant to be issued for the arrest of Mr. Mangus for probation violations.[1] Again, an apparent lapse of activity occurred from the issuance of that arrest warrant until approximately July 15, 1992. Mr. Mangus' probationary period expired on June 12, 1992. On July 15, 1992, Mr. Mangus' mother contacted Ms. McCartney by telephone and informed her that Mr. Mangus had been charged with marijuana possession in Georgia in July 1990. Upon learning of these charges, Ms. McCartney requested information from the West Virginia State Police and arranged for the arrest of Mr. Mangus in Georgia for West Virginia probation violations, including the newly discovered marijuana possession charge in Georgia.

On July 28, 1992, Calhoun County Prosecutor Tony Morgan advised authorities in Georgia that arrangements could not be made to transfer Mr. Mangus back to West Virginia.[2] It was not until August 3, 1992, almost two months after the expiration of his probationary term, that notice of a hearing to revoke probation was filed. That document alleged the following violations: 1) failure to make written reports to the probation office from February 1990 to June 1992; 2) absence from this state without authority from December 1989 to June 1992 (Mr. Mangus' authority to be out of West Virginia had expired in November 1989); 3) failure to report in person from November 1989 to June 1992; 4) failure to pay all court costs; 5) violation of laws of Georgia by possession of marijuana; 6) and, the act of possession of marijuana.[3]

---

**1.** These alleged violations included failure to contact the probation officer, failure to file supervision reports, and failure to return to West Virginia to consult the probation office on the scheduled basis.

**2.** Specifically, Tony Morgan informed authorities in Georgia as follows:

Please be advised neither my office nor the West Virginia Department of Public Safety can meet the Superior Court's deadline to pick up Curtis Mangus for return to the State of West Virginia to answer charges of probation violations. Therefore, please accept this as authorization to release Mr. Mangus, preferably on bond, for his appearance in the Circuit Court of Calhoun County, West Virginia, on the next judicial day. Thank you for your cooperation.

**3.** West Virginia Code § 62–12–10 (1989) provides the procedure for revocation of probation as follows:

If at any time during the period of probation there shall be reasonable cause to believe that the probationer has violated any of the

On August 12, 1992, the petition for a writ of prohibition was filed on behalf of Mr. Mangus. Mr. Mangus contends that his probationary period continued from June 12, 1989, through June 12, 1992, and that subsequent to the expiration of that probationary period on June 12, 1992, the lower court had no jurisdiction to revoke his probation. Mr. Mangus also alleges that the probation office was capable of contacting him at his address in Georgia and that he was amenable to service at all times. Furthermore, Mr. Mangus contends that the lower court lacks jurisdiction even though a violation may have occurred during the probationary term. *Jett v. Leverette*, 162 W.Va. 140, 247 S.E.2d 469 (1978). In *Jett*, we explained that "when either the statutory maximum or the shorter term [as set by the sentencing judge] has been served, the court no longer has jurisdiction to revoke probation." 162 W.Va. at 144, 247 S.E.2d at 471. Moreover, we emphasized that such jurisdictional limitation exists "even though the violation may have occurred during the probation term and regardless of the length of the underlying criminal sentence." *Id.*

## II.

■ However, the Petitioner's reliance upon the *Jett* decision is somewhat misplaced. While we did explain in *Jett* that a court has no jurisdiction to revoke probation after the expiration of the probation-

ary period even if a violation had occurred during the probationary period, we expanded our discussion of the issue in *State ex rel. Ostrander v. Wilt*, 164 W.Va. 184, 262 S.E.2d 420 (1980). In *Ostrander*, we explained that a court may revoke probation subsequent to the expiration of the probationary period under certain circumstances. In syllabus point 2 of *Ostrander*, we explained the following:

A circuit court has jurisdiction to revoke probation subsequent to the expiration of the probationary period where a warrant for the probationer's arrest for probation violation is issued prior to the expiration of the probationary period; where the probationer flees the jurisdiction and is apprehended only a short time prior to the expiration of his probationary period; and where the delay in hearing the probation revocation until after the expiration of the probationary period is occasioned by the actions of the petitioner and/or his counsel.

A petition for the revocation of probation had also been filed prior to the expiration of Ostrander's three-year term of probation.

We refer to *Ostrander* primarily to elucidate the principle that probation may indeed be revoked subsequent to the expiration of the probationary period under certain circumstances. However, the most troubling question raised in the instant case involves the related issue of the de-

conditions of his probation, the probation officer may arrest him with or without an order or warrant, or the court which placed him on probation, or the judge thereof in vacation, may issue an order for his arrest, whereupon he shall be brought before the court, or the judge thereof in vacation, for a prompt and summary hearing. If it shall then appear to the satisfaction of the court or judge that any condition of probation has been violated, the court or judge may revoke the suspension of imposition or execution of sentence, impose sentence if none has been imposed, and order that sentence be executed. In computing the period for which the offender is to be imprisoned, the time between his release on probation and his arrest shall not be taken to be any part of the term of his sentence. If, despite a violation of the conditions of probation, the court or judge shall be of the opinion that the interests of justice do not require that

the probationer serve his sentence, the court or judge may, except when the violation was the commission of a felony, again release him on probation.

Furthermore, the interstate compact concerning probationers and parolees, West Virginia Code § 28–6–1 (1992), may come into play in some instances wherein a probationer is permitted to move to another state and be supervised by the probation authorities in that state. It provides that "each receiving state will assume the duties of visitation of and supervision over probationers or parolees of any sending state and in the exercise of those duties will be governed by the same standards that prevail for its own probationers and parolees." W.Va.Code § 28–6–1(2). The record reflects no such agreement between Georgia and West Virginia in the present case. Apparently, West Virginia planned to continue supervision of Mr. Mangus without use of the compact.

gree of diligence exercised by the probation authorities in attempting to contact Mr. Mangus or in proceeding with the arrest warrant. An arrest warrant for the probation violations, not including the marijuana charges, was filed prior to the expiration of the probationary period, as in *Ostrander,* but no other affirmative action was taken with regard to Mr. Mangus until Ms. McCartney was contacted by Mr. Mangus' mother subsequent to the expiration of the probationary period. We must therefore determine whether the actions of the probation office and the filing of an arrest warrant justify departure from the usual prohibition against revocation proceedings subsequent to the expiration of the probationary term. In *Ostrander,* other factors involving the probationer's own degree of intransigence were combined with the filing of an arrest warrant to justify revocation subsequent to the expiration of the probationary period. The record does not reflect any specific action of the probationer in this case which would indicate that he prevented the probation office from taking more substantial action against him or limited their efforts to any degree. The degree of diligence of the probation authorities may be a dispositive issue in examining this question of revocation subsequent to the expiration of the probationary period. Whether and under what circumstances such revocation of probation will be permitted must necessarily depend to some degree upon that diligence.

This approach has been employed by other jurisdictions examining the issues of revocation subsequent to the expiration of the probationary period. In *Hunter v. State,* 820 S.W.2d 5 (Tex.App.1991), for instance, the defendant pled guilty to forgery and had been given a ten-year probationary term. Although a motion to revoke probation was filed and a warrant for his arrest was issued prior to the expiration of the probationary period, the defendant was not arrested for more than ten years. The Court of Appeals of Texas held that while the lower court maintained jurisdiction due to the issuance of the arrest warrant and the filing of a motion to revoke, revocation could not be permitted based upon the state's failure to discharge its burden to demonstrate the exertion of diligent efforts to apprehend the defendant. *Id.* at 6.

In *Burch v. State,* 821 S.W.2d 385 (Tex. App.1991), the Court of Appeals of Texas reexamined a similar issue and held that failure of the state to satisfy due diligence requirements was a failure of proof on the merits rather than a jurisdictional defect. The court found that distinction to be of great import due to the differences in procedure between characterizing the issue of due diligence as jurisdictional or simply a matter of proof on the underlying issue. As the *Burch* court recognized, "[i]f the due-diligence requirement were jurisdictional, the state would *always* have the burden of showing due diligence, and its failure to do so would deprive the court of jurisdiction, even if the defendant never raised the issue." *Id.* at 386–87, 821 S.W.2d 385. Furthermore, if the issue is considered jurisdictional, a court would have to hold some type of evidentiary hearing on the issue of due diligence prior to finalizing a jurisdictional determination. On the other hand, if the due diligence issue is not jurisdictional in nature, a court could potentially assume jurisdiction and subsequently address the issue of the state's due diligence. As the *Burch* court concluded,

> a court has *jurisdiction* to revoke probation after the probationary period expires if (1) a motion to revoke is filed before the term of probation expires and (2) a *capias* or warrant is issued prior to the expiration of the probationary period. Once these jurisdictional requirements have been established, they must be *followed by* proof from the state by a preponderance of the evidence that: (1) the defendant violated a term or condition of his probation; and if due diligence is raised at the revocation hearing then, (2) due diligence was exercised to apprehend the defendant and (3) due-diligence was exercised to hear the motion to revoke.

*Id.* at 387, 821 S.W.2d 385.

Unlike the *Burch* court, we do not have the benefit of any formal precedent enumerating the general conditions under

which revocation subsequent to expiration of the probationary period is permitted. We did find such action appropriate under the particular factual scenario of *Ostrander*, but we have not had occasion to set forth a general approach applicable to all cases. In *Ostrander*, one of the three listed factors justifying revocation subsequent to the probationary period was the filing of a warrant for the probationer's arrest prior to the expiration. Even in *Ostrander*, both an arrest warrant and a motion to revoke had been filed prior to the expiration of the probationary period.

 We believe that a probation violation charge must be brought prior to the expiration of the probationary term in order to allow a court to retain jurisdiction after the expiration of the probationary term. Thus, in order to sustain and extend the jurisdictional authority to revoke probation subsequent to the expiration of the probationary period, the probationer must at least be charged with the probation violation prior to such expiration. Where no such charges are brought prior to the expiration of the probation term, jurisdiction does not continue beyond the date of such expiration. While a hearing on probation violations may be held subsequent to the probationary period, authorities should use due diligence in attempting to notify the probationer of the alleged violation prior to the expiration of the probationary period in order to extend any right to proceed against the probationer after the expiration of the probationary period. This approach essentially creates a two-pronged analysis.

The first portion of this analysis requires an evaluation of jurisdictional issues and the second portion, a determination regarding matters of proof such as violation of probation and, if the issue is raised, due diligence of the state.

 Application of that approach to the present case discloses lack of jurisdiction to proceed against Mr. Mangus on violations of probation based upon his Georgia marijuana offense. Mr. Mangus was not notified, during the probationary term, of a violation of probation based on that marijuana offense. The petitioner was placed on a three-year term of probation on June 12, 1989. On November 21, 1990, a warrant was issued for the petitioner's arrest. This arrest warrant, however, did not include the marijuana violation. Yet no revocation proceedings were initiated until August 3, 1992, almost two months after the expiration of the probationary period.[4]

Even if notice of probation violations based on the marijuana charges had been given and jurisdiction had therefore been extended, the state's lack of due diligence could potentially have defeated its attempt to revoke Mr. Mangus' probation.[5] Accordingly, we grant Mr. Mangus' request for a writ of prohibition based upon the lower court's lack of jurisdiction to entertain this revocation issue.

Writ granted.

**4.** Consistent with our approach to revocation of probation procedures, a summary hearing must be held pursuant to West Virginia Code § 62–12–10. Furthermore, as we explained in syllabus point 12 of *Louk v. Haynes*, 159 W.Va. 482, 223 S.E.2d 780 (1976),

The final revocation proceeding required by the due process clause of the Fourteenth Amendment and necessitated by W.Va.Code, 62–12–10, *as amended*, must accord an accused with the following requisite minimal procedural protections: (1) written notice of the claimed violations of probation; (2) disclosure to the probationer of evidence against him; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-

examine witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (5) a 'neutral and detached' hearing officer; (6) a written statement by the fact-finders as to the evidence relied upon and reasons for revocation of probation.

**5.** The probation office did, however, file an arrest warrant on November 21, 1990, during Mr. Mangus' probationary term, of the violations of probation such as failure to report, failure to file supervision reports, and failure to return to West Virginia for visitation to the probation office. There was apparently no follow-up to this warrant, however, and it does not appear from the record that Mr. Mangus was even notified of that warrant.