634 S.E.2d 389

STATE of West Virginia Plaintiff
Below, Appellee

v.

Gary INSCORE, Defendant
Below, Appellant.

No. 32855.

Supreme Court of Appeals of
West Virginia.

Submitted April 12, 2006.

Decided June 26, 2006.

Darrell V. McGraw, Jr., Attorney General, Kelley M. Goes, Assistant Attorney General, Charleston, for Appellee.

R. Thomas Czarnik, Esq., Princeton, for Appellant.

STARCHER, J.:

The appellant, Gary Inscore, plead guilty in West Virginia to three felony offenses. He was sentenced under the Youthful Offenders Act to the Anthony Correctional Center. After successfully completing the program at the Anthony Center, the appellant was placed on probation for three years. While on probation, the appellant was arrested in Virginia and ultimately sentenced to serve a three-year sentence in Virginia.

A West Virginia probation officer filed a petition to revoke appellant's probation, and the prosecuting attorney filed a detainer with the Virginia corrections authorities and subsequently caused several bench warrants to be issued for the appellant's arrest. No further action was taken until the appellant completed his term of confinement in Virginia.

By the time the appellant was brought before the West Virginia circuit court for a hearing on the petition to revoke probation, his West Virginia probation period had expired. Appellant moved for dismissal of the petition which was denied by the circuit court, and the original West Virginia sentence was imposed. It is from this order that the appellant appeals.

For the reasons stated herein, we affirm.

## I.

### Facts & Background

On October 13, 1999, the appellant, Gary Inscore, was indicted by the Mercer County grand jury. One indictment contained thirteen counts that included breaking entering and petit larceny. A second indictment contained nine counts that included attempting to purchase goods using a false credit card, purchasing goods by the use of a false or fictitious credit card, and forgery of a credit card. On February 29, 2000, pursuant to a plea agreement, the appellant plead guilty to two counts of breaking and entering and one count of purchasing goods by use of a false or fictitious credit card.

On May 1, 2000, the appellant was sentenced to indeterminate sentences of not less

than one year and not more than ten years on each of the breaking and entering charges, these sentences to be served consecutively. The appellant was also sentenced on the credit card charge for a term of not less than one year and not more than ten years to be served concurrently with the breaking and entering sentences.

Because the appellant was eligible to be sentenced under the Youthful Offender Act, the circuit court suspended the sentences and committed the appellant to the Anthony Correctional Center for at least six months.[1]

On March 16, 2001, after successfully completing the Anthony Correctional Center program, the appellant was returned to the circuit court. The circuit court continued the appellant's suspended sentence, and placed the appellant on probation for three years. The terms of probation were the general conditions established by law. The general conditions under *W.Va.Code*, 62–12–9 [2001] include the condition "[t]hat the probationer may not, during the term of his or her probation, violate any criminal law of this or any other state or of the United States." Appellant's probation was to expire on March 16, 2004.[2]

On May 4, 2001, less than two months after the appellant was released on proba-

tion, appellant was arrested in Virginia on aggregate bad check and worthless check charges, both felonies. On June 11, 2002, the appellant was found guilty in a Virginia court and was sentenced to eight years of incarceration, of which five years were suspended.

On March 4, 2002, after the appellant was arrested in Virginia, but before he was convicted in Virginia, appellant's West Virginia probation officer petitioned the West Virginia circuit court to revoke appellant's West Virginia probation. The petition was filed prior to the date on which appellant's probation was set to expire. Multiple bench warrants were issued for the arrest of the appellant beginning March 1, 2002, and ending with a bench warrant being served on the appellant on September 7, 2004, upon his return to West Virginia.[3] The orders entered by the circuit court for the issuance of bench warrants indicated on their face that they were being issued for the pending petition to revoke probation.

■ In addition to the bench warrants, on October 24, 2002, while the appellant was incarcerated in Virginia, the West Virginia prosecuting attorney requested that the Virginia Department of Corrections lodge a detainer against the appellant.[4]

---

1. See *W.Va.Code*, 25–4–1, *et seq.* [1999].

2. Appellant's counsel for this appeal was first appointed at the time the appellant was returned to Mercer County from the Anthony Correctional Center. Appellant's previous attorney had retired and was not available for the hearing. Counsel commented in his brief about his appointment as counsel, stating that, "I never opened a file nor submitted a voucher for payment on the 10 minute proceeding."

3. The record reflects that bench warrants were issued for the arrest of the appellant on the following dates: March 1, 2002, February 18, 2003, June 16, 2003, October 20, 2003, February 17, 2004, June 22, 2004 and September 7, 2004.

4. A detainer in the context of this case is an administrative mechanism to assure that an inmate subject to an unexpired term of confinement in another jurisdiction will not be released from custody until the jurisdiction requesting custody has had an opportunity to take the inmate into custody. The detainer is a matter of comity.

The following is the text of the detainer letter:
October 24, 2002

Virginia Department of Corrections
Detainer Section
Attn. Gloria McGuire
P.O. Box 26963
Richmond, VA 23261
Re: State of West Virginia vs. Gary Stephen Inscore, Jr. Mercer County Felony Nos. 99–FE–214–K & 99–FE–254–K
Dear Ms. McGuire:
Enclosed please find a certified copy of the indictments and Warrants for Arrest of Defendant, which are pending in Mercer County, West Virginia, against the above named individual, for the offense of "Attempt to Purchase Goods by the Use of a False or Fictitious Credit Card; Purchase Goods by the Use of a False or fictitious Credit Card; and Forgery of a Credit Card." Would you please lodge a Detainer against this individual and advise our office as least fifteen (15) days prior to their release from your institution? If the defendant is placed at another facility, would you please forward same to that facility?
If you have any questions or comments, please contact me at the above number or address. Thank you for your cooperation in this matter.

On August 19, 2004, after completion of his Virginia sentence, the appellant waived extradition to appear at his West Virginia probation revocation hearing.

On September 7, 2004, after the appellant had been transported to West Virginia, he was arrested on a bench warrant issued pursuant to the probation revocation proceedings. On October 8, 2004, the circuit court conducted an evidentiary hearing on the petition to revoke probation. Appellant's counsel made a motion to dismiss the petition; the motion was denied. Appellant's probation was revoked and the original sentence was reinstated.

It is from the October 8, 2004 order that the appellant appeals.

The appellant asserts that the circuit court erred in denying appellant's motion to dismiss the petition to revoke appellant's probation which had expired seven months prior to the probation revocation hearing date.

## II.

### Standard of Review

■ Before addressing the merits of the appellant's contentions, we examine the standard of review. We stated in Syllabus Point 1 of *State v. Duke*, 200 W.Va. 356, 489 S.E.2d 738 (1997):

> When reviewing the findings of fact and conclusions of law of a circuit court sentencing a defendant following a revocation of probation, we apply a three-pronged standard of review. We review the decision on the probation revocation motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review.

■ Since the instant case involves, in part, the interpretation of the Agreement on Detainers, *W.Va.Code*, 62–14–1 [1971], Sylla-

bus Point 1 of *Appalachian Power Co. v. State Tax Department*, 195 W.Va. 573, 466 S.E.2d 424 (1995), which held that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review" is also applicable.

■ Further, this Court has recognized that "[a]s the United States Supreme Court has stated, '[t]he Agreement [on Detainers] is a congressionally sanctioned interstate compact within the Compact Clause, *U.S. Const.*, Art.1, § 10, cl. 3, and thus is a federal law subject to federal construction.'" *State v. Somerlot*, 209 W.Va. at 128, 544 S.E.2d at 55 (*quoting Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516, 520 (1985)).

■ Finally, with respect to standards of review, we stated in Syllabus Point 5 of *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959):

> When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.

With these principles in mind we now examine the appellant's contentions.

## III.

### Discussion

■ We turn first to the issue of whether the Agreement on Detainers, *W.Va.Code*, 62–14–1 [1971] (the "Agreement") has any application to the facts of this case. The appellant asserts among other things that because the prosecuting attorney took no action on the detainer within the time periods prescribed in the Agreement, the petition to revoke probation should be dismissed. We disagree.

Very truly yours,
William J. Sadler
Prosecuting Attorney
Mercer County, West Virginia
WJS/mpb
Enclosure
cc: Court file

Andrew Maier
A copy this letter was sent to an attorney in the office of the Mercer County Public Defender, who was not appellant's attorney at the hearing at which the appellant was placed on West Virginia probation.

*W.Va.Code*, 62–14–1 [1971], Article I of the Agreement states:

> The party states find that charges outstanding against a prisoner, detainers based on *untried indictments, informations or complaints*, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on *untried indictments, informations or complaints*. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures.

(Emphasis added.)

In 1971 the West Virginia Legislature enacted the Agreement on Detainers as *W.Va. Code*, 62–14–1 pursuant to the Compact Clause of the *U.S. Constitution*, Art. 1, § 10, cl. 3, and congressional authorization. Nearly all fifty states have likewise enacted a version of the Agreement. In looking to federal construction and interpretation, we consider *Carchman, v. Nash*, 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985), to be dispositive of whether the time periods provided in the Agreement are applicable to the facts of the case before this Court.

In *Carchman*, the defendant pled guilty in New Jersey to charges of breaking and entering and assault. He was sentenced to two consecutive terms of eighteen months. The New Jersey court suspended two years of the sentences and imposed a two-year term of probation following imprisonment. While on probation, the defendant was arrested in Pennsylvania for additional crimes, convicted and subsequently sentenced.

While awaiting trial on the Pennsylvania charges, New Jersey court officers notified the Pennsylvania court that the defendant had violated the terms and conditions of his New Jersey probation by committing offenses in Pennsylvania. A bench warrant was issued by the New Jersey court and lodged as a detainer with the correctional officials in Pennsylvania. The defendant then began sending a series of letters to the New Jersey officials requesting final disposition of the probation revocation proceedings. When the revocation proceedings did not occur within the 180–day time period as provided by Article III of the Agreement,[5] the defendant filed a writ of habeas corpus based upon noncompliance with the Agreement.

The facts of *Carchman, supra*, are squarely on point with the undisputed facts presented in this appeal. The Court in *Carchman* stated:

> The language of the Agreement therefore makes clear that the phrase "untried indictment, information or complaint" in Art. III refers to criminal charges pending against a prisoner. A probation-violation charge, which does not accuse an individual with having committed a criminal offense in the sense of initiating a prosecution, thus does not come within the terms of Art. III. Although the probation-violation charge might be based on the commission of a criminal offense, it does not result in the probationer's being "prosecuted" or "brought to trial" for that offense. Indeed, in the context of the Agreement, the probation-violation charge generally will be based on the criminal offense for which the probationer already was tried and convicted and is serving his sentence in the sending state.
>
> . . .
>
> We therefore conclude from the language of the agreement that a detainer based on a probation-violation charge is not a detainer based on "any untried indictment, information or complaint," within the meaning of Art. III.

■ Appellant had no "untried indictments, informations or complaints" pending against him. We, therefore, hold that a de-

---

5. Both New Jersey and Pennsylvania had adopted the Agreement on Detainers that has been adopted by the West Virginia Legislature and included in *W.Va.Code*, 62–14–1 [1971].

tainer based on a violation of probation is not included in "untried indictments, informations or complaints" within the meaning of the Agreement on Detainers, contained in *W.Va.Code,* 62–14–1 [1971].

■ In the context of the Agreement, the appellant also asserts the application of *W.Va.Code,* 62–3–21 [1959],[6] the three-term rule. The language of *W.Va.Code,* 62–3–21 [1959] is clear and unambiguous. This statute applies to "[e]very person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial . . . ." As the Agreement in *W.Va.Code,* 62–14–1 [1971] contemplates a defendant yet to be tried, *W.Va.Code,* 62–3–21 [1959] likewise contemplates the same. Neither are applicable to an already-convicted person who has been sentenced, placed on probation and subsequently charged with a violation of probation and facing a revocation of probation hearing.

Therefore, using the same reasoning as the Court used in *Carchman, supra,* we hold that *W.Va.Code,* 62–3–21 [1959] has no application to probation revocation proceedings.

■ The appellant also asserts that the delay in conducting the probation revocation hearing violates the appellant's constitutional right to a speedy trial.[7] In response to this assertion, we consider the reasoning in the

case of *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) to be instructive.

In *Moody,* the petitioner committed a crime while on parole. Soon after the petitioner's incarceration for new crimes, a parole violator warrant was issued but not executed. The warrant was *lodged* with prison officials as a detainer. The parole board took the position that it would not *execute* the warrant until the petitioner completed his sentence for his new crime. The petitioner filed a habeas corpus action on the grounds that he had been denied the right to a prompt hearing. The Court held that the petitioner was not constitutionally entitled to a prompt parole revocation hearing. In *Moody,* the Court reasoned that:

> . . . [T]here is a practical aspect to consider, for in cases such as this, in which the parolee admits or has been convicted of an offense plainly constituting a parole violation, the only remaining inquiry is whether continued release is justified notwithstanding the violation. This is uniquely a "prediction as to the ability of the individual to live in society without committing antisocial acts." *Morrissey v. Brewer,* 408 U.S. at 480, 92 S.Ct. at 2599, 33 L.Ed.2d. at 493 (1972) In making this prophecy, a parolee's institutional record can be perhaps one of the most significant factors. Forcing deci-

6. *W.Va.Code,* 62–3–21 [1959] states:

Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict; and every person charged with a misdemeanor before a justice of the peace, city police judge, or any other inferior tribunal, and who has therein been found guilty and has appealed his conviction of guilt and sentence to a court of record, shall be forever discharged from further prosecution for the offense set forth in the warrant against him, if after his having appealed such

conviction and sentence, there be three regular terms of such court without a trial, unless the failure to try him was for one of the causes hereinabove set forth relating to proceedings on indictment. trial, unless the failure to try him was for one of the causes hereinabove set forth relating to proceedings on indictment.

7. *W.Va. Const.,* Art. III, § 14 states:

Trials of crimes, and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offence was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county. In all such trials, the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witness against him, and shall have the assistance of counsel, and a reasonable time to prepare for his defence; and there shall be awarded to him compulsory process for obtaining witnesses in his favor.

sion immediately after imprisonment would not only deprive the parole authority of this vital information, but since the other most salient factor would be the parolee's recent convictions, here a double homicide, a decision to revoke parole would often be foreordained. Given the predictive nature of the hearing, it is appropriate that such hearing be held at the time at which prediction is both most relevant and most accurate at the expiration of the parolee's intervening sentence.

*Moody v. Daggett,* 429 U.S. at 89, 97 S.Ct. at 279, 50 L.Ed.2d at 245.

A parole revocation hearing to be held at the conclusion of a sentence on subsequent criminal charges committed while on parole, and a probation revocation hearing scheduled to be heard after serving a sentence for a subsequent crime while on probation, represent similar circumstances. Therefore, we believe that the reasoning in *Moody,* as applied, also applies to probation revocation hearings.

Finally, we turn now to the appellant's argument that the appellant's probation was revoked *after* his term of probation had expired, and that the prosecuting attorney failed to exercise due diligence to notify the appellant of the petition to revoke probation, and to secure the appellant's attendance at the revocation hearing.

Revocation of probation procedures are generally governed by *W.Va.Code,* 62–12–10 [1955][8] and Court decisions issued pursuant thereto. We believe the case of *Mangus v. McCarty,* 188 W.Va. 563, 425 S.E.2d 239 (1992) is controlling on all three of these issues—revocation after the probation term

had expired, and due diligence on the part of the prosecutor with respect to notice and timing of the revocation hearing.

In *Mangus* the defendant received a suspended sentence with three years probation. The probationary period was scheduled to expire on June 12, 1992. Mangus traveled to Georgia on a travel permit issued by his probation officer for purposes of allowing Mangus to obtain employment. The terms of the permit required Mangus to return to West Virginia by November 28, 1989, to meet with his probation officer. Mangus claimed that he did, in fact, return to West Virginia in November 1989, but was unable to contact his probation officer due to the Thanksgiving holiday. Mangus returned to Georgia. Soon after his return he was informed by letter that he had a new probation officer. No further attempts were made to contact Mangus until approximately one year later.

On November 21, 1990, Mangus' new probation officer caused a warrant to be issued for his arrest based upon alleged probation violations, including failure to report as required by the terms of probation. An apparent lapse of activity then occurred with respect to the case until July 15, 1992. Ironically, on that day Mangus' mother called the probation officer and informed the officer that her son had been charged with marijuana possession in Georgia in July 1990. This information led to the arrest of Mangus in Georgia for violation of his West Virginia probation. The West Virginia prosecuting attorney, however, notified Georgia authorities that arrangements could not be made to transfer Mangus back to West Vir-

8. *W.Va.Code,* 62–12–10 states:
   If at any time during the period of probation there shall be reasonable cause to believe that the probationer has violated any of the conditions of his probation, the probation officer may arrest him with or without an order or warrant, or the court which placed him on probation, or the judge thereof in vacation, may issue an order for his arrest, whereupon he shall be brought before the court, or the judge thereof in vacation, for a prompt and summary hearing. If it shall then appear to the satisfaction of the court or judge that any condition of probation has been violated, the court or judge may revoke the suspension of

   imposition or execution of sentence, impose sentence if none has been imposed, and order that sentence be executed. In computing the period for which the offender is to be imprisoned, the time between his release on probation and his arrest shall not be taken to be any part of the term of his sentence. If, despite a violation of the conditions of probation, the court or judge shall be of the opinion that the interests of justice do not require that the probationer serve his sentence, the court or judge may, except when the violation was the commission of a felony, again release him on probation.

ginia and that they should release him on bond.

On August 3, 1992, after Mangus returned to West Virginia and almost two months after his probation should have expired on June 12, 1992, a petition for revocation of probation was filed.[9] Mangus responded by filing a petition for a writ of prohibition challenging the circuit court's authority to revoke his probation on the grounds that his probation period had expired prior to the petition to revoke probation being filed.

We held in Syllabus Point 2 of *Mangus, supra,* that:

In order to sustain and extend the jurisdictional authority to revoke probation subsequent to the expiration of the probationary period, the probationer must at least be charged with the probation violation prior to such expiration. Where no such charges are brought prior to the expiration of the probationary term, jurisdiction does not continue beyond the date of such expiration.

The Court in *Mangus* further explained that:

While a hearing on probation violations may be held subsequent to the probationary period, authorities should use due diligence in attempting to *notify* the probationer of the alleged violation prior to the expiration of the probationary period in order to extend any right to proceed against the probationer after the expiration of the probationary period. This approach essentially creates a two-pronged analysis. The first portion of this analysis requires an evaluation of jurisdictional issues and the second portion, a determination regarding matters of proof such as violation of probation and, if the issue is raised, due diligence of the state.

*Mangus v. McCarty,* 188 W.Va. at 568, 425 S.E.2d at 244 (1992) (emphasis added).

In applying these principles to the instant case, we conclude that since the petition to revoke probation was filed prior to the expiration of the appellant's probation, the first prong of the analysis is satisfied.

The second prong of the analysis addresses whether or not the prosecuting attorney exercised due diligence. We cannot say from the facts in this case that the prosecuting attorney did not exercise due diligence.

In the instant case the prosecuting attorney went further than did the prosecutor in *Mangus* by causing to be issued multiple bench warrants after the filing of the petition to revoke probation. The prosecuting attorney also invoked the detainer process—for both notifying the appellant of the pending petition to revoke probation and for the purpose of reserving the right to have the appellant returned to West Virginia to face revocation proceedings.[10] We believe that under these circumstances, sufficient due diligence was exercised to protect the defendant's right to have notice of the pending action, and the State's right to proceed with the probation revocation process.

Accordingly, we hold that where a defendant is incarcerated in another state and prosecuting authorities in West Virginia wish to proceed with probation revocation proceedings, it is a sufficient exercise of due diligence for the prosecuting attorney to invoke the detainer process and to cause one or more bench warrants to issue for the defendant's arrest as a means of notifying the defendant of the pendency of the petition to revoke probation.

The appellant also argues that due diligence required the prosecuting authorities to

---

9. The notice of hearing included the following violations of probation:

1) failure to make written reports to the probation office from February 1990 to June 1992; 2) absence from this state without authority from December 1989 to June 1992 (Mr. Mangus' authority to be out of West Virginia had expired in November 1989); 3) failure to report in person from November 1989 to June 1992; 4) failure to pay all court costs; 5) violation of laws of Georgia by possession of marijuana; 6) and, the act of possession of marijuana.

*Mangus v. McCarty,* 188 W.Va. at 565, 425 S.E.2d at 241 (1992).

10. The better practice in invoking the detainer process would be to include as an attachment to the detainer letter, a copy of the petition to revoke probation and a statement requesting that the asylum state's correction authorities deliver a copy of the petition to the defendant.

**452**

secure the appellant's attendance in a West Virginia court prior to the expiration of the appellant's sentence by exercising its prerogatives under the Agreement, by writ of habeas corpus *ad prosequendum* or extradition. We disagree.

We stated in *Mangus, supra*, 188 W.Va. at 568, 425 S.E.2d at 244:

Even if notice of probation violations based on the marijuana charges had been given and jurisdiction had therefore been extended, the state's lack of due diligence could potentially have defeated its attempt to revoke Mr. Mangus' probation.

In *Mangus*, unlike the instant case, Mangus was not incarcerated and was available for service of process. Further, the West Virginia prosecuting authorities in *Mangus* took no action whatsoever for approximately one year after Mangus' first violation of probation.[11] This failure to act was further exacerbated by the failure of the prosecuting authorities to take any action on the case until after Mangus' mother informed the probation officer of Mangus' criminal activity that occurred approximately two years earlier.

In the instant case the appellant was brought before the West Virginia circuit court within a reasonable time after the appellant completed his Virginia sentence.[12] We believe that under the circumstances of the instant case the prosecutor satisfied the due diligence requirement of *Mangus* by proceeding with the probation revocation hearing within a reasonable time following the appellant's completion of his Virginia sentence.

Therefore, we hold that where a defendant is incarcerated in another state and the prosecuting authorities in West Virginia wish to proceed with probation revocation proceedings, it is a sufficient exercise of due diligence for the prosecuting attorney to bring the defendant before the West Virginia court for a probation revocation hearing within a reasonable time following the conclusion of his sentence in the asylum state.

## IV.

### Conclusion

Based upon the foregoing, we affirm the circuit court.

Affirmed.

---

11. November 21, 1990, is the date on which a warrant was issued for Mangus' arrest. When the warrant was issued the alleged violations included failure to contact the probation officer, failure to file reports, and failure to return to West Virginia.

12. Appellant waived extradition in August 19, 2004, the West Virginia arrest warrant was executed in September 7, 2004, and the probation revocation hearing was conducted on October 8, 2004.