**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0170** (Fayette County 15-F-61)

**Rodney M. Crawford,**
**Defendant Below, Petitioner**

**MEMORANDUM DECISION**

Petitioner Rodney M. Crawford, by counsel Katherine H. Arritt, appeals the Circuit Court of Fayette County's February 5, 2020, "Order Relating to Adjudication and Disposition of Alleged Probation Violations" and February 24, 2020, dispositional probation revocation and commitment order. Respondent the State of West Virginia, by counsel Lara K. Bissett, filed a response to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted in May of 2015 of one count of embezzlement from The Pawn Shop One, LLC, and thirteen counts of "taking the identity of another person." On July 1, 2015, petitioner pled guilty to one count of embezzlement. On September 21, 2015, he was sentenced to one to ten years of incarceration, but that sentence was suspended and petitioner was placed on supervised probation for sixty months. Petitioner was also ordered to pay restitution. While on probation, in May of 2017, he was arrested and charged with nine counts of forgery and nine counts of obtaining money under false pretenses. In October of 2018, petitioner pled guilty to a single count of "fraudulent schemes" in Fayette County Case No. 18-F-13. In the interim, a notice of revocation was filed in May of 2017, citing petitioner's recent arrest and a positive drug test that occurred on April 27, 2017. The notice also alleged that petitioner had been living in Kanawha County without informing his probation officer; at that time, petitioner had not paid any of the ordered restitution.[1] On November 7, 2018, petitioner was sentenced to one year in the Southern

_____

[1] The notice provided that a preliminary hearing had been set for June 5, 2017; neither party nor the circuit court address why that hearing did not take place.

1

Regional Jail on the fraudulent scheme conviction (18-F-13), though petitioner's probation was not addressed at that time. Further, the sentencing order did not indicate whether the term of imprisonment was to be served concurrently or consecutively with petitioner's pre-existing probation.

Petitioner was released from the Southern Regional Jail on March 30, 2019, and returned to probation. On October 18, 2019, a new revocation notice was filed, referencing the criminal charges from 2017, drug-related violations, and failure to pay restitution as ordered. A preliminary hearing was held on November 14, 2019, at which time petitioner waived the hearing and the matter was set for adjudication. He was, however, released on bond following that hearing. Thereafter, a bench warrant was issued on November 22, 2019, after petitioner tested positive for methamphetamines and amphetamines on November 21, 2019. Petitioner was picked up on that bench warrant on November 27, 2019, and remained in the regional jail.

A combined adjudicatory and dispositional revocation hearing was held on January 13, 2020, during which petitioner admitted that he had been convicted in October of 2018 of a misdemeanor crime of fraudulent schemes, using methamphetamine, and lying about his drug use to his probation officer. He further admitted that he never asked the court or his probation officer to modify his monthly restitution payment obligation or made any effort to reduce his personal monthly expenses in order to allow him to make the required restitution payments. Petitioner's probation officer testified that he was new to the job when petitioner was indicted in January of 2018 and had intended to address the probation violation issues raised by the new criminal charge when he prepared the presentence investigation report for that charge. However, according to his testimony, he learned from the circuit court that the probation violation would have to be addressed separately. Further, he did not file a notice of revocation at the time of petitioner's sentencing in 18-F-13 because petitioner "was already going to jail." Following the hearing, petitioner filed a supplemental pleading to request that he be sanctioned under West Virginia Code § 62-12-10(a)(2) and be permitted to attend rehabilitation at Recovery Point in Bluefield, West Virginia.

In its February 5, 2020, "Order Relating to Adjudication and Disposition of Alleged Probation Violations," the circuit court found that there was "no question that [petitioner's] criminal conviction alone would justify revocation of probation." It also found that the State was not required to await disposition of the new charges before pursuing revocation of the existing probation as a result of the new charges. Petitioner argued that the passage of time and the completion of his subsequent sentence following his misdemeanor conviction without any prior revocation of his then-existing probation should prohibit the circuit court from using that conviction as a basis for revocation of probation. The circuit court noted that Rule 32.1 of the West Virginia Rules of Criminal Procedure requires that final revocation proceedings must take place within a reasonable time, stating that it had located several West Virginia cases dealing with the issue of reasonable time when the probation revocation final hearing took place after the defendant's term of probation had expired. In its order, the circuit court discussed this Court's findings in *State v. Inscore*, 219 W. Va. 443, 634 S.E.2d 389 (2006), and *Mangus v. McCarty*, 188 W. Va. 563, 425 S.E.2d 239 (1992). The circuit court found that "[w]hile *Mangus* is instructive that the State's lack of due diligence could serve to waive a probation violation, the case before the [circuit c]ourt is distinguishable from *Inscore* and *Mangus* because those cases involved revocation proceedings ***after*** expiration of the term of probation."

2

After considering numerous United States Supreme Court cases and cases from other jurisdictions, the circuit court found that

> the delay in not proceeding with the probation revocation directly after [petitioner] was charged with the new offense and while he was incarcerated was not prejudicial to [petitioner]. [] Therefore, the focus for this case is the delay in pursuing the probation revocation based upon [petitioner's] new conviction ***after*** his release from his jail sentence.

The circuit court further found that the State had not offered

> any significant justification for this delay and no evidence was presented from which the [c]ourt could find that [petitioner] caused or contributed to the delay following his release from incarceration. After [petitioner's] release from incarceration, the State did not immediately take any steps to pursue the first Notice of Revocation[,] which had been filed shortly after [petitioner] received the new charges. [Petitioner] was, however, clearly on notice of the State's intent to revoke based on the new charges initially in June of 2017. The second Revocation Notice was filed nearly seven (7) months after [petitioner's] release from incarceration.

According to the circuit court, petitioner did not seek clarification as to the status of his probation or ask for a hearing on the first notice of revocation following his release from incarceration. Because the delay following the completion of petitioner's sentence could not be attributed to petitioner, the circuit court found that the focus was whether the delay had prejudiced petitioner. In addressing that issue, the circuit court found that, aside from the mere delay itself, "[petitioner] presented no evidence to show that he was prejudiced by the delay in moving forward with the revocation proceedings."

While the circuit court found "the delay and the procedural history of this case [] unfortunate," it held that petitioner "must demonstrate that he has somehow been prejudiced by the delay. Because of the plea, loss of witness memory, stale evidence, or defenses to the charges in [] 18-F-13 are not an issue." It went on to find that, under these circumstances, petitioner had not demonstrated the requisite prejudice, and merely having to defend against the allegation over a year after his plea to a charge did not, by itself, establish prejudice. The circuit court determined that petitioner's conviction for "fraudulent schemes" was more than a minor traffic violation or simple possession of a controlled substance so, consistent with West Virginia Code § 62-12-10(a)(1) and *State v. Halcomb*, 178 W. Va. 455, 360 S.E.2d 232 (1987), the court had discretion to revoke petitioner's probation and impose the previously suspended sentence.

The circuit court acknowledged that, at the hearing, petitioner's counsel correctly argued that petitioner's failure to pay restitution must be willful before the court could use such violation to revoke petitioner's probation. The court went on to find that while it was uncontroverted that petitioner had failed to pay as ordered, based upon the evidence before the court it could not find that the State had met its burden to show that petitioner had willfully, with a rebellious attitude, failed to pay the restitution when his financial means are taken into consideration. Thus, while

3

petitioner had failed to comply with the terms of his probation, the court could not revoke petitioner's probation based upon his failure to pay restitution.

Further, it found that the drug-related violations fall under West Virginia Code § 62-12-10(a)(2), so if only those violations were at issue, the court would be bound by the graduated sanctions. However, petitioner's new offense falls under West Virginia Code § 62-12-10(a)(1), which gives the court discretion to revoke petitioner's probation and reinstate the previously suspended sentence. Finally, the circuit court found that upon review of petitioner's file, petitioner had

> consistently and repeatedly violated the terms and conditions of his probation. . . . [T]he Updated Case Summary and the prior Notice of Revocation outline numerous instances of failure to report, other drug related issues, and a general lack of effort to comply with the terms and conditions of probation. More importantly, [petitioner] has been charged and ultimately convicted of another crime while on probation. [] While on bond awaiting these revocation proceedings, [petitioner] failed drug screens resulting in revocation of his bond. . . . [Petitioner's] substance abuse issues have manifested throughout his probation. Unfortunately, now at this late juncture with his suspended sentence looming over him, [petitioner], for the first time, desires to address his substance abuse issues. [Petitioner] has wasted over four (4) years of probation at this point with little to no noticeable progress or commitment to complying with the terms and conditions imposed. [] At this late stage of his probation and based on [petitioner's] historical performance, the [c]ourt lacks confidence that [petitioner] would fully participate in the rehab and comply with the terms and conditions of probation as amended.

In conclusion, the circuit court found as follows: (1) the appropriate disposition of petitioner's violations under West Virginia Code § 62-12-10 is revocation of his probation and imposition of the penitentiary sentence previously suspended pursuant to the September 24, 2015, sentencing order; (2) petitioner shall be given credit for time served awaiting disposition of the revocation proceedings; (3) the probation officer shall prepare an updated report to provide to all counsel and the court with petitioner's appropriate jail credit; (4) petitioner shall not be given credit for time served on his sentence in 18-F-13; (5) following the receipt of the update from the probation officer, the prosecutor's office was to prepare an appropriate sentencing order consistent with the circuit court's order; and (6) petitioner was remanded to the custody of the Division of Corrections and Rehabilitation for completion of his sentence.

On February 24, 2020, the circuit court entered its dispositional probation revocation and commitment order, sentencing petitioner to one to ten years of incarceration for the felony offense of embezzlement. The effective sentence date is November 27, 2019, and petitioner was credited with seventy-two days' time served while awaiting disposition in the underlying matter. Petitioner appeals from the February 5 and February 24, 2020, orders of the Circuit Court of Fayette County.

> We stated in Syllabus Point 1 of *State v. Duke,* 200 W.Va. 356, 489 S.E.2d 738 (1997):

4

When reviewing the findings of fact and conclusions of law of a circuit court sentencing a defendant following a revocation of probation, we apply a three-pronged standard of review. We review the decision on the probation revocation motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review.

*Inscore* at 447, 634 S.E.2d at 393.

On appeal, petitioner sets forth two assignments of error: (1) The trial court erred in "not disregarding the allegation of violation of rule no. one" of the October 18, 2019, notice of revocation, as this accusation originally appeared in the May of 2017 notice of revocation, and the court failed to schedule a prompt preliminary hearing, as required by Rule 32.1 of the West Virginia Rules of Criminal Procedure, depriving petitioner of due process; and (2) the trial court erred in revoking petitioner's probation on the basis of his conviction in Indictment No. 18-F-13, as the State waived its right to pursue revocation on these grounds due to its lack of due diligence.

However, petitioner's brief fails to comply with the West Virginia Rules of Appellate Procedure. As the State points out, and petitioner admits, his brief does not comply with Rule 10(c)(7), as it does not contain a single citation to the record.[2] Rule 10(c)(7) requires that

[t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and *citing the authorities relied on*, under headings that correspond with the assignments of error. *The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal.* The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(Emphasis added). Additionally, in an Administrative Order entered December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure*, this Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. In addition to the complete lack of citation to the record, petitioner refers to some cases without full citations or including those cases in the table

---

[2] In petitioner's reply brief, his counsel asserts that she inadvertently filed a "draft" version of the petition and did not realize the error until it was pointed out by the State in its responsive brief. However, petitioner did not move to amend the brief in order to comply with this Court's rules.

of authorities, as required by Rules 10(c)(2)[3] and 10(c)(7). For these reasons, we decline to address the merits of petitioner's assignments of error.

Affirmed.

**ISSUED:**  July 19, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[3] Rule 10(c)(2) provides: "If the brief exceeds five pages it must include a table of authorities with an alphabetical list of cases, statutes, and other authorities cited, and references to the pages of the brief where they are cited. The table of authorities does not count toward the page limit for briefs."